# Herron *v.* Pittsburg, Appellant.

|   |   |
|---|---|
| 204 | 509 |
| 208 | [1]499 |
| e209 | [3]401 |
| 25 SC | [1] 93 |
| 204 | 509 |
| 212 | [3] 90 |
| f 28 SC | 615 |
| 204 | 509 |
| f219 | [4]390 |

*Negligence—Municipalities—Dangerous wire—Evidence—Ordinance.*

It is the duty of all parties using a highly dangerous agent, to use care commensurate with the danger, in order to prevent injury to persons or property exposed to its influence. Cities are not excepted from the rule, and the fact that the agent is used or supervised under the police power does not excuse negligence in such use.

In an action against a city to recover damages for personal injuries sustained by a boy from contact with a live, naked, telephone wire, used in the police service of the city, the case is for the jury where it appears that the break in the wire was known to the police officials within an hour after it occurred, and that it was also known to them that in close proximity to it were other wires, some of which carried strong and dangerous currents of electricity.

In such a case it is not improper to admit in evidence an ordinance of councils and rules of the police department relating to the inspection and use of wires owned and controlled by the city.

*Negligence — Contributory negligence — Parent and child — Dangerous wire.*

In an action by a father to recover damages for personal injuries sustained by his son from coming in contact with a broken and dangerous wire, the question of the father's contributory negligence in not warning his son, is for the jury, where it appears that the father shortly after leaving his home in the morning as he went to work, saw the wire on the pavement and carefully avoided it, and that he knew that his son would shortly pass the same place on his way to school.

Argued Oct. 31, 1902. Appeal, No. 118, Oct. T., 1902, by plaintiff, from judgment of C. P. No. 1, Allegheny County, Dec. T., 1901, No. 413, on verdict for plaintiffs in case of Vincent Herron, by his Father and Next Friend, Hugh Herron, and Hugh Herron, *v.* City of Pittsburg. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for personal injuries to a boy seven years old. Before BROWN, J.

At the trial it appeared that on September 25, 1901, plaintiff was injured by coming in contact with a police call wire which had broken and fallen to the street. The call wire was of itself harmless, but after falling it became charged with a heavy current of electricity from a feed wire of an electric   .

railway.  It appeared that about eight o'clock on the morning of the accident the father of the plaintiff on his way to work saw the wire and carefully avoided it.  He did not return to his home, which was a short way off, to warn his son.  The boy was injured in the afternoon on his return from school. There was evidence that the police officials knew of the break in the wire within an hour after it occurred.  The court admitted under objection and exception an ordinance of the city and rules of the police department relating to the inspection and use of the city wires.  [2-6]

The court charged in part as follows:

[While the call wire was harmless in itself, yet by its proximate relations to highly or heavily charged wires about it, or in close proximity to it, it might, by contact with such wires, become a source of great danger.  Against such danger the city was bound to guard by a high degree of care.  This is the rule of care, clearly stated, by the Supreme Court in Fitzgerald v. Edison Electric Illuminating Company, 200 Pa. 540. Mr. Justice MITCHELL, delivering the opinion, says : " Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous.  The difference in this respect is not apparent to the ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case.  The company, however (in this case the city), which uses such a dangerous agent, is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires, and liable to come, accidentally or otherwise, in contact with them.  The duty is not only to make the wire safe, but to keep it so by constant oversight and repair.  The case, in this aspect, is analogous to an action against a municipal corporation for an injury from a defective highway.  The plaintiff is not bound to show direct and express notice of the defect (to the city in this case), but may show that it has existed for such a period that it ought to have been known to the authorities (in this case the city of Pittsburg)."

This raises a question for the jury, viz : as to whether the

city, by the exercise of proper care, under all circumstances, ought to have known of this highly dangerous condition upon the pavement. If it ought to have known; if there was such a reasonable time, or rather, if such a reasonable time elapsed within which the city, by the exercise of proper care under the circumstances, would have discovered or ought to have discovered its dangerous condition on the highway, then the city was guilty of want of care, and is responsible for the damages, at least to the little boy, and perhaps to the father, but that is further along.

Not only was it the duty of the city to exercise a high degree of care in the situation, by ordinance (and entirely outside of the ordinance that same duty remained), but in the exercise of that care it had methods and means and it was bound to secure the reasonable method and means by which the proper inspection could be made. It had inspectors, or it was within the power of the city to have inspectors to make proper inspection at proper times, having due regard to the locality and situation. That is, if a dangerous condition might arise in a section of the town that was very slightly populated, where perhaps few passengers would go by during the day, a less degree of care, in a sense as to time perhaps, would be required there, than in a populous center, where it might be that millmen or other persons, in large numbers, frequently passed (as in this case) a point of danger.] [1]

Defendant presented these points:

1. That under the pleadings and evidence in this case, the verdict should be for the defendant. *Answer:* Refused. It is for the jury to say whether it is or not. [7]

Notice to a police or lineman employed by the city of Pittsburg that a telephone wire is down upon the street of the city of Pittsburg is not notice to the city. *Answer:* Refused under the evidence and testimony in this case. [8]

Before the jury can find the defendant guilty of negligence, it must be satisfied by the weight of the evidence, that its negligence was the proximate cause of the injury. *Answer:* Affirmed and the proximate cause of the injury, as we instruct you, would be the failure of the city, after the lapse of a reasonable time, to remedy that which it was its duty to remedy

in order to prevent injury to persons passing along the sidewalk. [9]

Verdict and judgment for Vincent Herron for $6,364, and for Hugh Herron for $864.

*Errors assigned* were (1, 7-9) above instructions, quoting them; (2-6) rulings on evidence, quoting the bill of exceptions.

*W. A. Blakeley,* with him *Thomas D. Carnahan,* for appellant.—The wire in question, being regularly maintained and used by the city in the exercise of its police power, there could be no responsibility for the damage that resulted from the improper and negligent exercise of the power: Elliott v. City of Philadelphia, 75 Pa. 347; Boyd v. Insurance Patrol, 113 Pa. 269; Betham v. City of Philadelphia, 196 Pa. 302.

If a municipality be responsible for the safety and proper maintenance of its call wires used as in this instance, it is not held to the same high degree of care in connection with lightly charged wires as are corporations using highly charged wires: Hand v. Cent. Penna. Tel. & Supply Co., 1 Lack. Leg. News, 351; Heh v. Consolidated Gas Co., 201 Pa. 443.

The city was not bound because of its ordinance or otherwise, to inspect or supervise the wires of other corporations or individuals strung along or through its streets: Dillon's Mun. Corp. sec. 950; Carr v. Northern Liberties, 35 Pa. 324.

Even if a municipality be charged with the duty of inspection it could only be to inspect for open and obvious dangers and not for latent ones: Lohr v. Philipsburg Boro., 156 Pa. 246; Burns v. Bradford City, 137 Pa. 361.

The father, Hugh Herron, was guilty of negligence in allowing his child to run at large upon a public street in a place where he himself might expect danger, and is not entitled to recover: McCool v. Lucas Coal Co., Lim., 150 Pa. 638; Glassey v. Hestonville, Mantua & Fairmount Passenger Railway Co., 57 Pa. 172.

*Joseph Howley,* with him *W. A. Hudson,* for appellee.—The case was for the jury: Mooney v. Luzerne Borough, 186 Pa. 161; Jackson Twp. v. Wagner, 127 Pa. 184; Fitzgerald v.

Edison Electric Illuminating Co., 200 Pa. 540; Philadelphia v. Smith, 23 W. N. C. 242; Allentown v. Western Union Tel. Co., 148 Pa. 117; Newlin Twp. v. Davis, 77 Pa. 317; McKeesport v. McKeesport, etc., Pass. Ry. Co., 2 Pa. Superior Ct. 242; Ottersbach v. Philadelphia, 161 Pa. 111.

OPINION BY MR. JUSTICE MITCHELL, January 5, 1903:

It is the duty of all parties using a highly dangerous agent, to use care commensurate with the danger, in order to prevent injury to persons or property exposed to its influence: Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540. Cities are not excepted from the rule, and the fact that the agent is used or supervised under the police power does not excuse negligence in such use: Mooney v. Luzerne Borough, 186 Pa. 161. The cases deciding that municipal corporations are not liable for errors of judgment or discretion, rest on entirely different principles.

The wire in this case was a police call wire and broke as early as eight o'clock in the morning. The fact of the break was known to the police officials presumably at or near that time, and according to the evidence certainly as early as nine o'clock. The wire was very lightly charged and not in itself dangerous, but it was a naked wire and strung on poles in close proximity to other wires, some of which carried strong and dangerous currents of electricity. The fact of the break, therefore, was notice that it might become dangerous, and imposed the duty of examination. Whether that duty was properly met under all the circumstances, the lapse of time, the condition and population of the neighborhood, the urgency of the possible danger, etc., was a question for the jury.

The evidence as to the ordinance, police regulations, etc., though not important, was not incompetent. It merely tended to make more clear and definite the responsibility for due care which existed outside of them.

The father saw the wire on the pavement as he went to work in the morning and knew that his son would shortly pass the same place on his way to school. He testified that he avoided stepping on the wire though he did not know whether it was dangerous or not. This was the act of a prudent man. Whether he ought further to have returned to his house which was close

at hand, to warn his son, was not so clear a duty that the court could declare it as a matter of law. It was a question of reasonable prudence or contributory negligence which was properly left to the jury.

Judgment affirmed.