# Aument, Appellant, *v.* Pennsylvania Telephone Company.

*Negligence—Telephone companies—Break of wire—Contact with electric light wire—Presumption—Evidence.*

As between a telephone company and one with whom it has no contract relation, no prima facie presumption of the company's negligence is raised by proof that its wire broke under the strain of a sleet storm of great and unusual severity, and fell upon an electric light wire stretched on the same pole.

In an action against a telephone company to recover damages for the death of a horse, it should not be submitted to the jury to determine that defendant was negligent in failing to maintain guard wires to prevent the telephone wires, in case of their falling, from coming in contact with electric light wires on the same pole, where there is no evidence that it was customary, or if not customary, that it was practicable for telephone companies to maintain guard wires under the circumstances of the case.

Where a telephone wire breaks during a great and unusual sleet storm, and falls upon an electric light wire, strung on the same pole, the telephone company cannot be charged with negligence because it did not learn of and repair the break within an hour or an hour and a half after it occurred. In such a case notice to the electric light company is not notice to the telephone company.

In an action against a telephone company to recover damages for killing a horse, it appeared that a telephone wire was strung on the poles which carried an electric light wire and that during a great and unusual sleet storm the telephone wire broke and fell upon the electric light wire, the end lodging in a pool of water in a gutter. The water became charged with electricity. Plaintiff's employee led the horse through the pool without observing the wire lying in the water. Having rubber boots on, the man was not hurt, but the horse was killed. *Held*, that the court could not say as a matter of law that the employee was guilty of contributory negligence.

Argued Nov. 16, 1904. Appeal, No. 200, Oct. T., 1904, by plaintiff, from order of C. P. Lancaster Co., Jan. T., 1904, No. 55, refusing to take off nonsuit in case of Edgar G. Aument *v.* The Pennsylvania Telephone Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass for the killing of a horse. Before LANDIS, P. J.

The facts relating to the accident are stated in the opinion of the Superior Court.

*Error assigned* was refusal to take off nonsuit.

*B. F. Davis*, with him *George A. Lane*, for appellant.—Guard wires should have been used: Central Penna. Tel. & Supply Co. v. Wilkes-Barre, etc., Ry. Co., 11 Pa. C. C. Rep. 417; Block v. Milwaukee St. Ry. Co., 89 Wis. 371 (61 N. W. Repr. 1101); Godfrey v. Ry. Co., 56 Ill. App. 378; State v. Street Ry. Co., 87 Wis. 72 (57 N. W. Repr. 970); City Electric Street Ry. Co. v. Conery, 31 L. R. A. 570; McKay v. Southern Bell Tel., etc., Co., 31 L. R. A. 589; Kankakee Electric Ry. Co. v. Whittemore, 45 Ill. App. 484; Hand v. Tel. & Supply Co., 1 Lacka. Leg. News, 351.

The doctrine of res ipsa loquitor is recognized by the courts of Pennsylvania. We think this is a proper case for its application: Shafer v. Lacock, 168 Pa. 497; Dillon v. Light Co., 179 Pa. 482; Turton v. Electric Co., 185 Pa. 406; Western Union Tel. Co. v. State, 82 Md. 293 (33 Atl. Repr. 763); Trenton Pass. Ry. Co. v. Bennett, 60 N. J. Law 219, (37 Atl. Repr. 730); Newark Electric Light & Power Co. v. Ruddy, 62 N. J. Law, 505 (41 Atl. Repr. 712); Suburban Electric Co. v. Nugent, 58 N. J. Law, 658 (34 Atl. Repr. 1069); Koelsch v. Phila. Co., 152 Pa. 355; Smith v. Boston Gas Light Co., 129 Mass. 318.

The electric light company, and the telephone company, had a common interest to protect the public from danger and notice to one was notice to both: Garrard v. R. R. Co., 29 Pa. 154; Ross v. Baker, 72 Pa. 186; Uggla v. Ry. Co., 160 Mass. 351 (35 N. E. Repr. 1126); Detlor v. Holland, 57 Ohio, 492 (49 N. E. Repr. 690); Baker v. Kellogg, 29 Ohio 663.

*W. U. Hensel*, for appellee.—The doctrine of res loquitor is not applied in Pennsylvania to accident cases 'arising from the use of electric appliances: Smith v. Electric Light Co., 198 Pa. 19; Alexander v. Water Co., 201 Pa. 252; Reese v. Clark, 146 Pa. 465; Heh v. Gas Co., 201 Pa. 443; Oil Co. v. Torpedo Co., 190 Pa. 350.

Proof of the happening of an accident is not enough. Plaintiff must prove by affirmative and direct evidence the particular negligence, and the defendant's liability: 1 Thompson on Negligence, p. 46, sec. 45; Whitaker v. Delaware & Hudson Canal Co., 87 Pa. 34; Brunner v. Blaisdell, 170 Pa. 25; Mixter v. Coal Co., 152 Pa. 395; Baran v. Reading Iron Co., 202 Pa. 274.

Where there is no contractual relation between the parties, negligence will not be presumed from the mere happening of the accident: Stearns v. Ontario Spinning Co., 184 Pa. 519; Kepner v. Traction Co., 183 Pa. 24; Snodgrass v. Carnegie Steel Co., 173 Pa. 228; Smith v. Electric Light Co., 198 Pa. 19.

A company maintaining a line of telegraph or other wires and poles is only bound to exercise reasonable care in the construction and maintenance of its lines and is not liable for the breaking of its poles by a storm of extraordinary severity, or by some unexpected external force: Ward v. Atlantic & Pacific Tel. Co., 71 N. Y. 81; Oil Co. v. Torpedo Co., 190 Pa. 350.

Where an omission to perform a duty is the basis of alleged negligence there must be reasonable opportunity to perform it: Phillips v. People's Pass. Ry. Co., 190 Pa. 222; Lyons v. Union Traction Co., 209 Pa. 72; Bube v. Weatherly Boro. 25 Pa. Superior Ct. 88.

OPINION BY RICE, P. J., October 9, 1905:

A single set of poles erected on the east side of Christian street in the city of Lancaster carried the wires of the Pennsylvania Telephone Co., the defendant, and, fifteen feet below them, the wires of the Lancaster Electric Light, Heat and Power Co. On the afternoon of February 21, 1902, during a severe sleet storm, which had prevailed for the greater part of the day, a wire of the telephone company broke, and fell across a wire of the electric light company, the end lodging in a pool of water in the gutter. There was evidence from which a jury could have found, if the question had been submitted to them, that by reason of its contact with the electric light wire, the telephone wire and the pool of water became heavily charged with electricity, and that in consequence the plaintiff's horse, when being led through the pool of water to the stable for shelter, received a shock and fell to the ground, where he came in contract with the " live " telephone wire, which was lying in the water, and was killed. The fact that the plaintiff's employee, who was leading the horse, did not receive a shock is explained by his testimony that he had on rubber boots. He also testified that, although he saw

broken wires hanging down in that immediate vicinity, he did not see the wire in the water, and did not know it was there. According to his testimony, he was pursuing a course to get into the stable whereby he would avoid the wires that he saw hanging down, and that would have been safe if the "live" wire above spoken of had not been lying extended in the water. Upon the testimony presented by the plaintiff, the court would not have been warranted in declaring as matter of law that the employee in charge of the horse was guilty of contributory negligence. Nor did the learned judge put his decision upon that ground.

We come then to the question of the defendant's negligence No evidence was adduced, that the breaking of the telephone wire was due to any defect in the wire itself, or to negligence, either in the original construction, or in the then existing condition, of the line. It is claimed, however, that the maxim res ipsa loquitur applies to the case, and, therefore, no other evidence than that the wire broke and fell to the ground was necessary to make out a prima facie case of negligence in one or more of the particulars above mentioned. There are decisions of courts outside this commonwealth to the effect that these facts, in the absence of explanation raise a presumption of negligence against the company using wires which carry a dangerous electrical current. See Boyd v. Portland General Electric Co., 57 L. R. A. 619 ; Newark Electric Light and Power Co. v. Ruddy, 62 N. J. L. 505, (41 Atl. Rep. 712) ; Ruddy *v.* Newark Electric Light & Power Co., 63 N. J. L. 357, (46 Atl. Rep. 1100) ; 57 L. R. A. 624 ; Hebet v. Lake Charles Ice, Light, etc., Co., 64 L. R. A. 101. So also our Supreme Court has held in a very recent case that where a patron of an electric light company, without knowledge that the wires on his premises are charged with a higher voltage than is safe, takes into his hand an electric lamp and is severely shocked and injured, the prima facie presumption is that the company was negligent and the doctrine res ipsa loquitur applies : Alexander v. Nanticoke Light Co., 209 Pa. 571. But in our case, it is to be noticed, there was no contract relation between the plaintiff and the defendant, the telephone wire that broke and fell did not carry a dangerous current, and the explanation of its breaking was brought out in the examina-

tion of the plaintiff's own witnesses. "The maxim res ipsa loquitur is itself the expression of an exception to the general rule that negligence is not to be inferred but to be affirmatively proved. The ordinary application of the maxim is limited to cases of an absolute duty, or an obligation practically amounting to that of an insurer. Cases not coming under one or both of these heads must be those in which the circumstances are free from dispute and show, not only that they were under the exclusive control of the defendant, but that in the ordinary course of experience no such result follows as that complained of:" East End Oil Co. v. Pennsylvania Torpedo Co., 190 Pa. 350. See also upon the same subject, Stearns v. Ontario Spinning Co., 184 Pa. 519. In Kepner v. Harrisburg Traction Co., 183 Pa. 24, where it appeared that the plaintiff's horse was frightened by the breaking of a trolley wire, and the plaintiff, alarmed by the noise and electric flashes occasioned by it, and the plunging of the horse, jumped or was thrown from the wagon to the ground and was seriously injured thereby, it was held that the fact of the unexplained breaking of the wire was not sufficient to carry the case to the jury. An elaborate discussion of the doctrine under consideration will be found in the opinion of the Supreme Court, rendered by Mr. Justice McCollum, and in the opinion of Judge McPherson, who tried the case. It was held in Smith v. East End Electric Light Co., 198 Pa. 19, that an electric light company is not liable for the death of a person who is killed by touching a defectively insulated wire while painting a roof, where there is no evidence as to the cause of the defect or that the company had notice of it. There is no conflict between that case and Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540, for in the latter the plaintiff offered to prove that the insulation had been defective for several weeks, as had been shown by the wire " spitting fire " when blown against the roof. The present Chief Justice said: "The case of Smith v. East End Electric Light Co., 198 Pa. 19, relied on by the appellee, differed entirely from the present in the absence of evidence of notice to the company of the defect. The testimony which should have been admitted here was sufficient to send that question to the jury:" In Dillon v. Allegheny County Light Co., 179 Pa. 482, the jury " found upon sufficient evidence

that the defendant permitted a dead and useless wire to remain upon its poles, on a street crowded with charged wires, many of them having such current passing through them that the slightest touch meant death. It knew, as its own witnesses testify, that any wire upon these poles was liable to break and carry the deadly current to the ground by falling across a live wire, especially if the wire was a naked one, as this wire admittedly was. This dead, useless and uninsulated wire did break, fell across a charged wire, carried down the current, and the death of the plaintiff's husband was the result." The decision was put upon the ground, not that a presumption of negligence arose from the breaking of the wire, but that permitting the wire to be upon the poles was, under the circumstances, evidence of negligence. This is shown by the concluding sentence of Judge McClung's opinion: "Where the necessary dangers are so great the unnecessary ones should all be eliminated." There is a class of cases which hold that a prima facie case of negligence is made out by proof that a broken wire, charged with electricity, was permitted to be on the highway after notice, actual or constructive, of the break : Devlin v. Beacon Light Co., 198 Pa. 583; Herron v. Pittsburg, 204 Pa. 509; Sorrell v. Titusville Electric Traction Co., 23 Pa. Superior Ct. 425. But these cases do not control the decision of the precise question now under consideration. They relate to a question which we shall consider later. To hold that as between a telephone company and one with whom it had no contract relation a prima facie presumption of the company's negligence is raised by proof that its wire broke under the strain of a sleet storm of as great severity and length as that which admittedly prevailed on the day of this accident, would require us to go far beyond any Pennsylvania decision, bearing upon the use of electricity, to which our attention has been called.

It is further contended that the defendant was negligent in not maintaining guard wires to prevent the telephone wires, in case of their falling, from coming in contact with the electric light wires. In answer, the defendant's counsel urges, amongst other things, that the plaintiff's statement contains no allegation that the telephone wire broke and lodged against the electric light wire in consequence of any negligence on the

part of the defendant. This position seems to be well taken. The allegation of the statement is that " for some cause or other," over which neither the plaintiff nor his employee had control, " a wire of the said telephone company was broken or became disengáged in some manner and fell to the street . . . . and lodged across a wire or line of " the electric light company. Then after alleging that the broken wire became charged with electricity through contact with the other wire, " which was a source of danger and peril to animals " walking along the street, and averring that the public had a right to have the street unobstructed, the statement proceeds, " yet the said defendant, well knowing the premises, disregarded its duty in that behalf, and permitted the said wire and the said line to be and remain in an unfit, negligent and improper condition, by reason whereof the said horse was destroyed or killed, as aforesaid." This seems to refer to the condition after the wire had broken, and if that be the correct interpretation of the allegation, the negligence charged was in permitting that condition to continue after knowledge of it had come to the defendant. But assuming that evidence of negligent construction would have been admissible under the pleadings, the more serious objection remains that no such evidence was introduced. It has been very clearly decided that a company which uses such dangerous agent as electricity is " bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them : " Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540. As was said in Koelsch v. Philadelphia Co., 152 Pa. 355, and Heh v. Consolidated Gas Co. 201 Pa. 443, " every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken." This principle is applicable to a telephone company, which, though its wires do not carry a dangerous current, maintains them upon the same poles upon which the wires, charged with a dangerous current, of another company are strung. If, therefore, there had been evidence that it is customary, or if not customary, that it is practicable for telephone companies to maintain guard wires under the circumstances proved on the trial, the plaintiff's case would pre-

sent a different aspect. But we cannot say that this was a question of fact upon which the generality of mankind are so well informed that the jurymen drawn from the ordinary walks of life ought to have been permitted to determine it without evidence, and then make their finding the basis of an inference that the omission to maintain such wires in the present instance was negligence, and the proximate cause of the injury complained of. We conclude, therefore, that under the pleadings and evidence the plaintiff was not entitled to have that question submitted to the jury.

The remaining question is, whether there was sufficient evidence of the defendant's negligence after the wire broke to carry the case to the jury. There is no evidence that the defendant had express notice of the break in the wires at that point prior to the accident, and we cannot agree with the plaintiff's counsel that the notice that was sent to the electric light company was notice to the telephone company. But the plaintiff was not bound to show direct and express notice to the telephone company; it was sufficient for him to show that the dangerous condition had existed for such a period that it ought to have been known to the company, if it had maintained that vigilant oversight, which, in view of the location of its wires with reference to the dangerous electric light wires, it was its imperative duty to exercise. See Turton v. Powelton Electric Co., 185 Pa. 406; Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540. But according to the testimony of the plaintiff's own witnesses, this was "a very stormy day," there was "a great deal of sleet and ice" and "wires were breaking down and wires were falling all over the city." From the very nature of things time was required for the repairs which this unusual condition made necessary. In view of the admitted facts, a finding that the defendant was negligent because it did not learn of and repair this particular break within an hour, or at the most, an hour and a half after it occurred, would be unreasonable. We dó not see how the learned judge could have held otherwise without coming in conflict with the decision in Smith v. East End Electric Light Co., 198 Pa. 19.

Judgment affirmed.